IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | CRIMINAL ACTION |
|---|---|
| v. | |
| JOSEPH VITO MASTRONARDO, JR. | NO. 12-388  -01 |
| JOHN MASTRONARDO | -02 |
| JOSEPH F. MASTRONARDO | -03 |
| ERIC WOEHLCKE | -04 |
| HARRY MURRAY | -05 |
| JOSEPH VITELLI | -06 |
| ANNA ROSE VITELLI | -07 |
| PATRICK TRONOSKI | -08 |
| EDWARD FEIGHAN | -09 |
| KENNETH COHEN | -10 |
| SCHUYLER TWADDLE | -11 |
| MICHAEL LOFTUS | -12 |
| RONALD GENDRACHI | -15 |

DuBois, J.                                                                                      May 28, 2014

**M E M O R A N D U M**

**I.     INTRODUCTION**

On August 1, 2012, a federal grand jury in the Eastern District of Pennsylvania returned a twenty-three count Indictment against the above-named defendants. All such defendants were charged in Counts One and Two of the Indictment with conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d), and conducting an illegal gambling business, in violation of 18 U.S.C. § 1955.[1]

---

[1] Two additional defendants, Michael Squillante and David Rounick, were also charged in Counts One and Two and plead guilty in 2013. The government filed a Motion to Dismiss the Indictment against another defendant, Joanna Mastronardo, who is not charged in Counts One and Two. Unless otherwise noted, reference to "defendants" in the instant Memorandum refers only to the captioned defendants.

Before trial, defendants entered into a "global plea agreement" whereby the government agreed to move for a two-level downward departure if defendants, collectively, plead guilty. Presently before the Court is Government's Motion Addressing the 2-Level Downward Adjustment for a Global Guilty Plea, construed by the Court as a Motion for Downward Departure. For the following reasons, the government's Motion is granted.

## II.   BACKGROUND

Defendants were indicted for crimes arising from their alleged participation in an illegal sports gambling business — the Mastronardo Bookmaking Organization ("MBO").[2] The MBO was headquartered in Montgomery County, Pennsylvania, with members and associates located across the United States and in Costa Rica. Defendants worked as bookmakers, agents, office employees, and technical-support staff. The MBO used password-protected websites, toll-free phone numbers, and personal meetings to take bets on a variety of sports. Bettors received a line of credit through their accounts and paid gambling debts on losing bets using cash, check, or wire transfer. The MBO paid winning bets in cash. At its peak, the MBO had over one thousand bettors and generated millions of dollars of betting activity a year.

The case was scheduled for trial to begin on February 3, 2014. After ruling on the parties' extensive evidentiary motions on December 13, 2013, the Court held the first part of a final pre-trial conference on December 16, 2013. At that conference, in response to defense counsels' request for additional time to discuss the Court's evidentiary rulings with their clients, the Court ordered that trial-status reports be submitted by each defendant by January 3, 2014. At the December 16, 2013 conference, the Court also determined that if the fourteen remaining

---

[2] The facts in this paragraph are taken from the Indictment as background and do not constitute facts found by the Court or facts that are, necessarily, the basis of any guilty plea accepted by the Court.

2

defendants proceeded to trial, two separate jury trials would be required, with a maximum of seven defendants in each trial. The parties estimated at that conference that the total trial time for the two trials would be approximately seven to nine weeks — six to seven weeks to try the government's case and one to two weeks to present the defense case.

The Court held a second final pre-trial conference on January 8, 2014. At the beginning of that conference, defense counsel reported that they were engaged in group plea discussions, which they planned to continue immediately following that conference. In view of the group plea discussions, the Court ordered updated trial-status reports by January 10, 2014. On that date, the government reported that the parties had negotiated a "global plea agreement." By January 17, 2014, the government reported that it had mailed signed plea agreements to all remaining defendants other than Joanna Mastronardo. As of February 7, 2014, all remaining defendants other than Joanna Mastronardo had signed the plea agreements and entered guilty pleas to, *inter alia*, Counts One and Two of the Indictment — conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d), and conducting an illegal gambling business, in violation of 18 U.S.C. § 1955.[3]

Each defendant's plea agreement provides that (1) all defendants charged in Counts One and Two must enter a guilty plea, (2) the sentencing court must accept the guilty pleas of all defendants charged in Counts One and Two, (3) no defendant may seek to withdraw his or her guilty plea, and (4) no defendant may breach the plea agreement. In the event that those conditions of the plea agreements were not met by any defendant, the government, in its sole discretion, had the right to avoid all of its obligations under all of the individual plea agreements.

---

[3] Several defendants, depending on their involvement in the MBO, plead guilty to additional counts pursuant to the global plea agreement, such as conspiracy to launder money in violation of 18 U.S.C. § 1955(h).

In consideration of the global plea agreement, the government agreed to move for an additional two-level downward departure from the offense level calculated under the United States Sentencing Commission Guidelines ("Guidelines").

The government filed the instant Motion for Downward Departure on February 24, 2014, requesting a two-level downward departure under section 5K2.0 of the Guidelines by reason of the global plea agreement. Defendants do not oppose the Motion.

### III. LEGAL STANDARD

Although the government denominates its Motion as "Motion Addressing the 2-Level Downward Adjustment for a Global Plea," the government in actuality seeks a downward departure from the sentencing guideline range pursuant to section 5K2.0. There are two types of departures: (1) those provided for by specific reference in the Guidelines; and (2) those that rest on grounds not mentioned in the Guidelines. U.S. Sentencing Guidelines Manual Ch. 1 Pt. A(4)(b) (2013). The Guidelines place essentially no limits on the potential factors that may warrant a downward departure. *United States v. Abuhouran*, 161 F.3d 206, 209 (3d Cir. 1998) (quoting *Koon v. United States*, 518 U.S. 81, 106 (1996)). "The [Sentencing] Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When the Court finds an atypical case . . . the court may consider whether a departure is warranted." U.S. Sentencing Guidelines Manual Ch. 1 Pt. A(4)(b) (2013). In determining whether a departure is permitted by the Guidelines, the district court must "make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *United States v. Tomko*, 562 F.3d 558, 566 (3d Cir. 2009) (en banc) (quoting *Koon*, 518 U.S. at 98).

Section 5K2.0 is a catch-all provision for granting a downward departure when a mitigating circumstance exists "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." U.S. Sentencing Guidelines Manual § 5K2.0 (2013). To determine whether a departure is appropriate under section 5K2.0, a sentencing court must answer two questions: (1) What factors take the case outside the "heartland" of typical cases considered by the Sentencing Commission? (2) Are those factors mentioned or unmentioned in other provisions of the Guidelines? *See Koon*, 518 U.S. at 95; *Abuhouran*, 161 F.3d at 210–11.

"A factor is unmentioned when it has no equivalent in the Guidelines." *Abuhouran*, 161 F.3d at 211 (quoting *Koon*, 518 U.S. at 96). Departures under section 5K2.0 based on factors unmentioned in the Guidelines are proper if, "after considering the structure and theory of the relevant individual guidelines and the Guidelines taken as a whole," the factor "distinguishes the case from the 'heartland' cases covered by the guidelines." *Id.* Alternatively, departures based on factors that are mentioned in other provisions of the Guidelines are proper only when "that factor is present to such a degree as to make the case 'different from the ordinary case where the factor is present.'" *See id.* (quoting *Koon*, 518 U.S. at 96).

**IV.    DISCUSSION**

   **A. Is This Case Outside the "Heartland" of Typical Cases?**

The Court begins by examining what, if any, features of the instant case take it out of the "heartland" of typical cases considered by the Sentencing Commission. The government argues that the global plea agreement warrants a departure because it avoids the need for two trials expected to take seven to nine weeks to complete. The global plea agreement is a "package-deal plea bargain," meaning the enforceability of each individual plea agreement is contingent on the guilty pleas of other defendants. Package-deal plea bargains are rare, but not unheard of, in

5

multi-defendant criminal cases, although the name for such agreements varies. *See, e.g.*, *United States v. Hodge*, 412 F.3d 479, 480 (3d Cir. 2005) ("package deal"); *United States v. Soto*, Nos. 08-cr-654, 08-cr-706, 2009 WL 765015, at *3 (2d Cir. March 25, 2009) ("global plea arrangement"); *United States v. Caro*, 997 F.2d 657, 658 (9th Cir. 1993) ("package deal"); *United States v. Mescual-Cruz*, 387 F.3d 1, 3 (1st Cir. 2004) ("package deal" or "wired" pleas).

Three factors take the global plea agreement in this case well outside the "heartland" of typical cases considered by the Sentencing Commission. First, a thirteen-defendant global plea agreement involves more defendants than are typically included in package-deal plea bargains. *See, e.g.*, *Hodge*, 412 F.3d at 480 (two defendants); *Caro*, 997 F.2d at 658 (four defendants); *Mescual-Cruz*, 387 F.3d at 3 (six defendants).[4] Second, the global plea agreement avoids the need for two consecutive jury trials that the parties estimated would take a total of seven to nine weeks to complete, much longer than the typical criminal case. Finally, the government, not defendants, moved for the two-level downward departure pursuant to section 5K2.0. The Court gives substantial weight to the government's determination that the circumstances presented in this case are atypical and warrant an additional downward departure.

For the foregoing reasons, the Court concludes that the global plea agreement makes this case atypical and takes the case outside the "heartland" of cases considered by the Sentencing Commission. The Court now turns to the question of whether the global plea agreement warrants a downward departure pursuant to section 5K2.0.

---

[4] These cases did not address whether a downward departure is warranted based on a package-deal plea bargain; rather, they dealt with whether the defendants entered into the package-deal plea bargain voluntarily. *See, e.g.*, *Hodge*, 412 F.3d at 488–91 ("Though allowed, package deal pleas pose special risks, particularly when a trial court is unaware that defendants' pleas are tied together."). Cognizant of the risks, the Court took care to ensure that defendants in this case knew of and voluntarily entered into the global plea agreement.

### B. Is the Global Plea a Mentioned or Unmentioned Factor in the Guidelines?

In deciding whether a departure is warranted under section 5K2.0, a district court must first determine whether the factor that takes a case outside the "heartland" is mentioned or unmentioned in the Guidelines. See *Abuhouran*, 161 F.3d at 210–11. "A factor is unmentioned when it has no equivalent in the Guidelines." *Id.* at 211 (quoting *Koon*, 518 U.S. at 96). Two sections of the Guidelines concern mitigating circumstances that are similar, but not equivalent, to the global plea agreement in this case: (1) section 5K1.1 Substantial Assistance to Authorities and (2) section 3E1.1 Acceptance of Responsibility. The Court concludes that the global plea agreement in this case is not the equivalent of either of those Guideline provisions. Thus, the global plea agreement is a factor that is unmentioned in the Guidelines.

    i.   Section 5K1.1 — Substantial Assistance to Authorities

Some courts have prohibited downward departures under section 5K2.0 for defendants who facilitate the guilty pleas of others because such departures are encompassed by section 5K1.1 "Substantial Assistance to Authorities." *See United States v. Dorsey*, 61 F.3d 260, 262 (4th Cir. 1995); *United States v. Shrewsberry*, 980 F.2d 1296, 1298 (9th Cir. 1992). In both *Dorsey* and *Shrewsberry*, defendants, not the government, moved for a downward departure for facilitating the guilty pleas of all other defendants in multi-defendant cases, thus saving the government and judiciary significant resources by avoiding the need for trial. *Dorsey*, 61 F.3d at 261; *Shrewsberry*, 980 F.2d at 1297. Both courts held that section 5K1.1 prohibited the district court from departing downward for such assistance in the absence of a government motion.[5] *Dorsey*, 61 F.3d at 262; *Shrewsberry*, 980 F.2d at 1297–98. Such rulings are inapplicable to this

---

[5] The rule that such departures cannot be considered absent a motion by the government has not been adopted unanimously across the United States Courts of Appeals. *See United States v. Dethlefs*, 123 F.3d 39, 46 (1st Cir. 1997); *United States v. Garcia*, 926 F.2d 125, 128 (2d Cir. 1991). This Court need not reach the question under the circumstances in this case.

7

case because the government, not defendants, moved for the downward departure. That the government did so pursuant to section 5K2.0 rather than section 5K1.1 is entirely appropriate.

Section 5K1.1 provides that "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." No defendant in this case claims to have assisted in the prosecution or investigation of another. The global plea agreement is a bargain to avoid the need for two lengthy criminal trials. Defendants agreed to pursue a global, rather than individual, plea agreement in return for the requested two-level downward departure. The government's Motion for Downward Departure in this case is not a reward for cooperation, information, or testimony already rendered, or to be provided; rather, it is an inducement to facilitate the defendants' guilty pleas in order to avoid the need for a lengthy trial. For those reasons, the requested departure in this case is not equivalent to a departure pursuant to section 5K1.1.

  **ii. Section 3E1.1 — Acceptance of Responsibility**

Section 5K2.0(d)(2) prohibits a downward departure under section 5K2.0 for "acceptance of responsibility for the offense, which may be taken into account only under §3E1.1." The Court concludes that the global plea agreement in this case is not a mitigating factor equivalent to those considered by the Sentencing Commission in section 3E1.1 and, thus, that the downward departure requested by the government is not prohibited by section 5K2.0(d). Section 3E1.1 encompasses two mitigating factors not raised by the government's Motion for Downward Departure. The Court addresses each such factor in turn.

The first mitigating factor in section 3E1.1 is provided for in subsection 3E1.1(a). That subsection allows for a two-level downward adjustment if "the defendant clearly demonstrates

acceptance of responsibility for his offense." Prior to 2003, when Congress amended the Guidelines by adding section 5K2.0(d), the Third Circuit permitted downward departures pursuant to section 5K2.0 for defendants who "demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present." *United States v. Severino*, 454 F.3d 206, 210 n.2 (3d Cir. 2006) (quoting *United States v. Lieberman*, 971 F.2d 989, 996 (3d Cir. 1992)). For instance, the Third Circuit in *Lieberman* approved a downward departure, beyond the two-level adjustment in subsection 3E1.1(a), for a defendant who began paying restitution promptly and in excess of that to which he plead guilty. 971 F.2d at 996. Further, the defendant in *Lieberman* quickly admitted to the full scope of his conduct, resigned his position at a bank, and explained how the bank could detect similar fraudulent transactions in the future. *Id.*

The requested downward departure for the global plea agreement in this case is not based on defendants' extraordinary acceptance of responsibility. Indeed, no party argues that a factor listed in the commentary for subsection 3E1.1(a) is present to any extraordinary degree, and those factors do not form the basis of the government's motion. *See* U.S. Sentencing Guidelines Manual § 3E1.1 cmt. 1 (2013). Rather, the government moves for a downward departure in this case solely as an inducement for defendants to assist in avoiding the need for two lengthy jury trials spanning a total of seven to nine weeks. For this reason, the global plea agreement is not a mitigating factor equivalent to that contemplated in subsection 3E1.1(a).

The second mitigating factor considered in section 3E1.1 is provided for in subsection 3E1.1(b), which states that, "upon motion of the government" stating that a defendant "timely notif[ied] authorities of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently," the sentencing court may adjust the offense level down by one point.

The global plea agreement in this case is not equivalent to the mitigating factor considered in subsection 3E1.1(b). Nothing in the text or commentary of section 3E1.1 suggests that the Sentencing Commission considered global plea agreements, as opposed to individual plea agreements, in subsection 3E1.1(b). *See, e.g.*, U.S. Sentencing Guidelines Manual § 3E1.1 cmt. 6 (2013) ("Subsection (b) provides an additional 1-level decrease in offense level for *a* defendant . . . who has assisted authorities in the investigation or prosecution of his *own* misconduct . . . .") (emphasis added). The global plea agreement in this case ties the enforceability of each individual plea agreement to the guilty pleas of all *other* defendants. All defendants charged in Counts One and Two of the Indictment must plead guilty in order for the government to avoid the extensive work involved in trial preparation; that work cannot be avoided unless all defendants plead guilty. Thus, the Court concludes that the global plea agreement is not equivalent to the mitigating factors considered by the Sentencing Commission in subsection 3E1.1(b).

For all of the foregoing reasons, the global plea agreement in this case is not equivalent to any factor mentioned in the Guidelines. The Court must next determine whether the factors present in this case distinguish it from the "heartland" of cases covered by the Guidelines to a degree sufficient to warrant a downward departure. *Koon*, 518 U.S. at 96.

### C. Is a Downward Departure Warranted?

After considering the "structure and theory" of "relevant individual guidelines and the Guidelines taken as a whole," *id.*, the Court concludes that the global plea agreement in this case is a mitigating factor warranting a two-level downward departure. The global plea agreement is an innovative mechanism through which the government and the court avoid expensive and time-consuming litigation. Defendants in this case were to be tried in two consecutive jury trials,

anticipated to last a total of seven to nine weeks. No single change of plea would conserve any appreciable amount of judicial or prosecutorial resources: the government would be required to produce evidence of the RICO conspiracy regardless of the number of defendants tried. The global plea agreement solves such a problem by rewarding defendants through a departure under section 5K2.0 for bringing finality to a complex criminal matter.

The importance of the global plea agreement in this case is buttressed by the fact that the government moved for the downward departure. The two-level departure represents consideration provided by the government for defendants' acceptance of the "global" terms of their plea agreements, and the Court gives substantial weight to the government's determination that such a departure is warranted under the circumstances presented.

The Court's conclusion that the global plea agreement in this case warrants a downward departure is necessarily fact bound and cannot be applied generally. Of particular importance to the Court in this case are the number of defendants in the global plea agreement (thirteen), the length of the potential trials (seven to nine weeks), the nature of the offenses charged (including the RICO conspiracy), and the fact that it is the government that moved for the downward departure.

Moreover, the Court does not conclude that a downward departure is warranted simply because defendants have taken extraordinary action to save judicial resources. Rather, the Court is ruling that a downward departure is necessary to facilitate the type of plea agreement used in this case, which is, in and of itself, a mitigating factor that saves both judicial and prosecutorial resources. This distinction is important. The United States Courts of Appeals are divided as to whether a sentencing court may grant a downward departure under section 5K2.0 for a defendant who, without intercession of the government, facilitates the guilty pleas of others. *See Dethlefs*,

123 F.3d at 46 (allowing); *Garcia*, 926 F.2d at 128 (allowing); *Dorsey*, 61 F.3d at 262 (not allowing); *United States v. Haversat*, 22 F.3d 790, 794 (8th Cir. 1994) (not allowing); *Shrewsberry*, 980 F.2d at 1298 (not allowing).  This case is different: the downward departure sought in this case pursuant to the global plea agreement is part of the bargain struck by the defendants and the government in order to resolve the entire case and avoid the need for two lengthy trials.  The Court concludes that the global plea agreement should be honored, and that the government's Motion for Downward Departure under section 5K2.0 should be granted.

## V.   CONCLUSION

For the foregoing reasons, the government's Motion for Downward Departure is granted. An appropriate order follows.